UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIMEE STURGILL,

       Plaintiff,                      Case No.

v.

                                                Hon.

THE AMERICAN RED CROSS,

       Defendant.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Aimee Sturgill ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, states the following for her Complaint and Jury Demand against The American Red Cross ("Defendant"):

## INTRODUCTION

1. There is no pandemic exception to the protections afforded by Michigan's Elliott-Larsen Civil Rights Act of 1976 (the "ELCRA"), MCL 37.2101,

*et seq*.  Defendant clearly did not understand this when it denied Ms. Sturgill a religious exemption to its COVID-19 vaccine requirement, despite the fact that she performed the majority of her work remotely.  Instead of engaging with Ms. Sturgill in the spirit of "bilateral cooperation," Defendant violated ELCRA by terminating Ms. Sturgill based on speculation that the company's customers would be requiring the vaccine, and then questioning the sincerity of her religious beliefs without any justification.

## PARTIES AND JURISDICTION

2. Plaintiff is an individual residing in the City of Brownstown, County of Wayne, State of Michigan.

3. The American Red Cross, headquartered in Washington, D.C., is an American non-profit humanitarian organization that provides emergency assistance, disaster relief, and disaster preparedness education.

4. Plaintiff's claims arise out of Defendant's violation of the Michigan Elliott-Larsen Civil Rights Act of 1976, MCL 37.2101, *et seq*.

5. This Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all relevant times was, a corporation duly organized and existing under the laws of Washington D.C., and Plaintiff is now, and at all relevant times was, a citizen domiciled in the State of Michigan.  Moreover,

the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(e), as it is the district in which Plaintiff resides. 28 U.S.C. § 1391(e).

7. Plaintiff filed charges of religious and disability discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 28, 2022 and will amend her Complaint to allege federal discrimination claims under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000e, *et seq*., once she receives a right to sue letter.

## FACTUAL ALLEGATIONS

### COVID-19 and Defendant's Vaccine Mandate

8. On December 18, 2020, Defendant urged its employees to "discuss with their health care provider whether they should receive the vaccine."

9. One month later, for no apparent reason, Defendant directed its employees to complete a survey to "gauge their interest" in receiving the vaccine.

10. On May 19, 2021, Defendant officially forced its employees to reveal their vaccination status.

11. By that point, employees were subject to different terms and conditions of employment depending on their vaccination status.

3

12. On May 19, 2021, President Gail McGovern communicated to Defendant's employees: "[I]t is my *fervent hope* that all employees…will get a vaccine."

13. On August 6, 2021, employees were again forced to disclose their vaccination status.

14. Finally, on October 28, 2021, Defendant announced its COVID-19 vaccine mandate on October 28, 2021, requiring certain employees, including Plaintiff, to become fully vaccinated from COVID-19.

15. Defendant's requirement is absolute; it offers no alternative, such as periodic testing, mask wearing, social distancing, etc., even for employees who have already had COVID-19 and still possess natural immunity from the disease.

**Plaintiff's Employment and Religious Accommodation Request**

16. Plaintiff seeks to make daily decisions, including her vaccination status and other medical decisions, through prayer scripture.

17. Plaintiff's sincerely held religious beliefs prevent her from receiving the COVID-19 vaccination.

18. On August 11, 2021, Plaintiff was interrogated by Defendant regarding her vaccination status when Holly Huber, Defendant's Liaison to Direct Patient Care, sent Plaintiff an email stating, in pertinent part, "[m]any customers are requiring vaccinations, so [Defendant is] preparing for that outcome."

4

19. When Plaintiff requested that Ms. Huber elaborate on her email, Ms. Huber responded: "[W]e have had a few…patients who have requested only vaccinated nurses."

20. On August 13, 2021, Ms. McGovern pressured Defendant's employees to get vaccinated in a company-wide email, stating, in pertinent part: "Please, if you have yet to get a vaccine, I strongly encourage you to do so. It will give you peace of mind and will help keep you and your loved ones safe."

21. Anticipating a vaccine mandate announcement from Defendant, Plaintiff preemptively initiated a Religious Workplace Accommodation Request on September 13, 2021.

22. Plaintiff's Request stated, in pertinent part:

> My sincerely held religious belief for my accommodation stems from the biblical teaching of my spiritual leader Jesus Christ . . . 1 Corinthians 3:17: 'If anyone destroys God's temple, God will destroy him. For God's temple is holy, and you are that temple' . . . The ingredients in the vaccines can cause serious harm and even death to our body. Having a blood clotting disorder makes this a VERY important concern to me . . . [G]etting the COVID-19 vaccine would go against my conscience and against God's law.

23. In the letter, Plaintiff emphasized her continued willingness to wear a mask, as well as her willingness to cooperate with other reasonable accommodations.

5

24. Human Resources Supervisor Timothy Smelser assured Plaintiff that "[Defendant] is not requiring current employees to be vaccinated."

25. Defendant's statement became false when it announced its company-wide vaccine mandate on October 28, 2021.

26. Plaintiff emailed her intent to request accommodation on November 1, 2021, only three days after the mandate was announced.

27. Defendant denied Plaintiff's accommodation request on November 19, 2021.

28. In the denial letter, Defendant stated, in pertinent part:

> You have failed to identify a religious belief, practice, or observance that prohibits you from being vaccinated against COVID-19…[O]ur records reflect that you have received a three-dose series of Hepatitis B vaccine…If there is additional information that you would like us to consider in connection with your request, please submit this information as soon as possible. *If additional information is not received within two days from the date of this denial, this decision will be considered final.*

29. Defendant failed to engage with Plaintiff in an interactive process – it failed to ask for clarification, discuss her proposed accommodations, or even generally discuss its decision.

30. Defendant's denial letter to Plaintiff implied that she "failed" an arbitrary "test" to evaluate the sincerity of her religious beliefs.

6

31. Despite being given only the weekend to compose her appeal, Plaintiff did appeal her denial letter, stating, in pertinent part:

> This is my letter to give additional information to support my accommodation request . . . I always seek to honor God. I walk and live according to God's laws. My body is the temple of the Holy Spirit, and taking the COVID-19 vaccine, would be defiling my body . . . I will not defile my body with unwanted intrusions. I take the upmost care of my body and continue to honor God and the temple he gave me. Taking the COVID-19 vaccine would go against that sincere religious belief . . . As a believer who may have had childhood vaccines or even a Hepatitis B vaccine many years ago, that does not contradict or negate the veracity of my individual belief and my desire to abstain from the COVID-19 vaccine.

32. Defendant failed to consider several feasible alternatives for accommodations, including weekly testing, PPE, and self-monitoring.

33. Defendant finalized its denial of Plaintiff's accommodation request on December 6, 2021, when Defendant informed Plaintiff that she did not set forth "a religious belief, practice, or observance [that] deems the [COVID-19] vaccine defiling."

34. Defendant did not provide a satisfactory explanation to Plaintiff.

35. Defendant's denial letter was riddled with typographical errors.

36. By denying Plaintiff's Request for Accommodation, Defendant forced her to choose between her religious beliefs and her career.

37. Ultimately, Plaintiff was terminated by Defendant on January 4, 2022.

38. The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business").

39. "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process — a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

40. Defendant neither requested nor suggested that Plaintiff participate in any discussion to determine a fair and legal accommodation.

41. But for Plaintiff's refusal to vaccinate against COVID-19, Plaintiff would not have been terminated by Defendant.

42. "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith. It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children. To many, this

8

is the most horrifying of Hobson's choices." *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

43. Defendant sabotaged the interactive process and evaded any sort of bilateral cooperation.

44. Defendant failed to adequately explain why it denied Plaintiff's Request for Accommodation.

45. Defendant has no "satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

46. Plaintiff, nearly a fully-remote employee for Defendant, posed very little risk to spread COVID-19 to other employees.

47. Plaintiff attempted to engage in an interactive process with Defendant to explore alternate COVD-19 safeguards, however, Defendant denied Plaintiff of any sort of bilateral compromise.

48. With no substantive criteria to justify its denial of Plaintiff's request, Defendant effectively challenged Plaintiff's spirituality.

49. The sincerity of Plaintiff's religious beliefs is not open to question. *See Equal emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 471 F. Supp. 3d 684, 699 (M.D. Tenn. 2020); *citing United States v Seeger*, 380 U.S. 163, 185 (1965) ("[T]he truth of a belief is not open to question).

9

50. Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j); *see also* 29 C.F.R. § 1605.1 ("In most cases whether or not a practice or belief is religious is not at issue . . . [R]eligious practices . . . include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.").

51. An individual's testimony about his or her belief "must be given great weight" and is enough to show he has a *bona fide* religious belief. *See e.g.*, *Seeger*, 380 U.S. at 184 (1965) (When dealing "with the beliefs of different individuals who will articulate them in a multitude of ways . . . the claim of the [party] that his [or her] belief is an essential part of a religious faith must be given great weight).

52. Moreover, "[a]s long as a party's beliefs are religiously asserted, it is not for the courts to challenge the truthfulness of such assertions simply because they developed 'from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible." *E.E.O.C. v. Alliant Techsystems, Inc.*, No. CIV.A. 98-0084-R, 1998 WL 777015, at *6 (W.D. Va. Sept. 18, 1998) (*quoting Hobbie v. Unemployment Comm'n of Fla.*, 480 U.S. 136, 144 n. 9 (1987)).

53. There are no facts to suggest Plaintiff lacked credibility.

54. The sincerity of Plaintiff's religious beliefs is further supported by her steadfast refusal to vaccinate against COVID-19 even after Defendant attempted to force Plaintiff to vaccinate herself to avoid losing her job.

## Defendant Violated EEOC Guidance

55. On March 1, 2021, the EEOC expanded its guidance on religious exemption to employer vaccine mandates under Title VII of the Civil Rights Act of 1964 ("Guidance"). This Guidance describes in greater detail the framework through which the EEOC advises employers to resolve religious accommodation requests. *See* Guidance, *supra*.

56. The EEOC emphasizes that as a reasonable accommodation, and in lieu of vaccination, employees might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment. *Id*. at K.2.

57. The EEOC disallows an employer from relying on speculative hardships when presented with an employee's religious objection but, rather, requires the employer to rely on objective information. *Id*. at L.3.

58. According to the EEOC, in many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances without imposing an undue hardship. *Id*. at K.12.

59. The EEOC further instructs that "[i]f [an] employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. at L.5.

60. "[T]he definition of religion is broad and protects, beliefs, practices, and observances with which the employer may be unfamiliar." *Id*. at K.12.

61. "The definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs, practices, or observances, including those that may be unfamiliar to employers." *Id*. at L.2.

62. "The employer should ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." *Id*. at K.12.

63. "Employers should evaluate religious objections on an individual basis." *Id*. at L.2.

64. The EEOC states:

> An individual's beliefs – or degree of adherence – may change over time and, therefore, an employee's newly adopted or inconsistently observed practices may nevertheless be sincerely held. An employer should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenants of the employee's religion, or because the employee adheres to some common practices but not others. *Id*. at L.2.

65. "An employer should thoroughly consider all possible reasonable accommodations." *Id*. at K.12.

66. The EEOC states that there are factors which could "undermine an employee's credibility," including:

    a.    whether the employee has acted in a manner inconsistent with the professed belief (although employees need not be scrupulous in their observance);

    b.    whether the accommodation sought is a particularly desirable benefit that is likely to be sought for nonreligious reasons;

    c.    whether the timing of the request renders it suspect (for example, it follows an earlier request by the employee for the same benefit for secular reasons); and

    d.    whether the employer otherwise has reason to believe the accommodation is not sought for religious reasons.

*Id*. at K.12.

67. In most circumstances, it is possible to accommodate religious beliefs "without imposing an undue hardship." *Id*. at L.3.

### Defendant Cannot Establish Undue Hardship

68. Pursuant to Title VII, the prohibition against religious discrimination imposes an affirmative duty on employers to reasonably accommodate the religious observances and practices of its employees, unless the employer can demonstrate that such an accommodation would cause undue hardship to the conduct of its business. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

69. "The obligation to provide religious accommodations absent undue hardship is a continuing obligation that allows for changing circumstances." Guidance at L.6.

70. Defendant bears the burden to show "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir. 1978); *see also Baz v. Walters*, 782 F.2d 701, 706 (7th Cir. 1986); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir.1978); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir. 1989).

71. In the instant case, Defendant cannot show undue hardship. To date, Defendant has offered no reasoning to support its conclusion that granting Plaintiff's Request for Accommodation would result in undue hardship.

72. Defendant has not provided its criteria for determining whether an accommodation would pose an undue hardship.

73. An employer does not satisfy its burden of showing undue hardship "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975).

74. Without a proffered explanation as to why Defendant would endure undue hardship to accommodate Plaintiff individually, Defendant merely relies on hypothetical hardships. .

75. "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of actual imposition on co-workers or disruption of the work routine." *Townley Eng'g & Mfg. Co.*, 859 F.2d at 615 (9th Cir. 1988).

76. "An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information." Guidance at L.3.

77. Defendant's actions demonstrate its motive to avoid granting religious accommodations.

78. "[A]n employer who acts with the motive of avoiding accommodation may violate Title VII even if [it] has no more than an unsubstantiated suspicion that accommodation would be needed." *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773, 135 S. Ct. 2028, 2033, 192 L. Ed. 2d 35 (2015).

## COUNT I
### Violation of the ELCRA, MCL 37.2101, *et seq.*
### Religious Discrimination – Failure to Accommodate

79. Plaintiff restates the foregoing paragraphs as set forth fully herein.

80. At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of MCL 37.2101, *et seq.*

81. Pursuant to ELCRA, MCL 37.2202(1), it is unlawful for an employer to: "(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion[.]; or (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive

the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion[.]"

82. Defendant's mandatory vaccination policy evades any sort of bilateral cooperation or interactive process.

83. Defendant violated the law by failing to engage with Plaintiff to possible reasonable accommodations.

84. Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine mandate.

85. Defendant terminated Plaintiff due to her sincerely held religious beliefs.

86. Plaintiff's religious beliefs and protected activity were the causes of Defendant's retaliation and adverse employment action.

87. By retaliating against Plaintiff for engaging in protected activity, Defendant has violated ELCRA.

88. Defendant's violation has harmed and continues to harm Plaintiff.

## COUNT II
### Violation of Elliott-Larsen Civil Rights Act ("ELCRA") Religious Discrimination–Retaliation

89. Plaintiff restates the foregoing paragraphs as set forth herein.

16

90. Two or more persons shall not conspire to, or an individual person shall not on his or her own, retaliate against a person because the person has opposed a violation of the Elliott-Larsen Civil Rights Act ("ELCRA"). MCL 37.2701(a).

91. Plaintiff can establish a *prima facie* case of retaliation by showing (1) that he or she engaged in a protected activity; (2) that this was known by the employer; (3) that the employer took an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019).

92. Plaintiff engaged in protected activity when she requested a religious accommodation to Defendant's vaccine mandate.

93. Defendant retaliated by terminating Plaintiff on a PIP and later forcing her to resign.

94. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct.

95. Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, and suffered a loss of and impairment of her earning capacity and ability to work because of Defendant's retaliatory conduct.

96. Plaintiff has been required to employ the services of an attorney.

97. Defendant's actions were intentional and/or reckless.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a. Declare that Defendant has violated ELCRA by failing to engage in the interactive process in response to Plaintiff's request for accommodation to its COVID-19 vaccine mandate.

b. Declare that Defendant has violated ELCRA by discriminating against Plaintiff by failing to provide reasonable accommodations to its COVID-19 vaccine mandate.

c. Declare that Defendant has violated ELCRA by retaliating against Plaintiff for engaging in protected activity.

d. Award Plaintiff damages, including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

e. Award Plaintiff reasonable attorneys' fees and costs.

f. Grant any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)

                                          Attorneys for Plaintiff
                                          617 Detroit St., Ste. 125
                                          Ann Arbor, MI 48104
                                          (844) 487-9489
                                          *noah@hurwitzlaw.com*

Dated: August 9, 2022

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AIMEE STURGILL,

       Plaintiff,                             Case No.

v.

                                                Hon.

THE AMERICAN RED CROSS,

       Defendant.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St. Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
brendan@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

    Plaintiff, Aimee Sturgill, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                                                               Respectfully Submitted,
                                                                HURWITZ LAW PLLC

                                                                */s/ Noah S. Hurwitz*
                                                                Noah S. Hurwitz (P74063)
                                                                *Attorney for Plaintiff*

Dated August 9, 2022