UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIMEE STURGILL,

                Plaintiff,                    Case No. 22-cv-11837

v.                                      Paul D. Borman
                                      United States District Judge

THE AMERICAN RED CROSS

                Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF No. 27)

### INTRODUCTION

In this action, Plaintiff Aimee Sturgill asserts a claim for religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* ("Title VII") against Defendant The American Red Cross. In October 2021, Plaintiff was employed by Defendant as a registered nurse, when Defendant announced a company-wide vaccine mandate to combat the spread of COVID-19. Plaintiff sought an exemption from the vaccine mandate based on her religious beliefs, which Defendant denied. Plaintiff appealed the decision, but this appeal was also denied. Plaintiff still refused to be vaccinated and Defendant fired her shortly thereafter. Plaintiff contends that Defendant's refusal to accommodate her religious

1

beliefs and exempt her from the vaccine mandate amounted to religious discrimination under Title VII. Now before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Fed R. Civ. P. 12(b)(6) (ECF No. 27), which has been fully briefed (ECF Nos. 32, 35).

The Court has carefully considered the parties' submissions and does not believe that oral argument will aid in its disposition of this matter; therefore, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

# I. PROCEDURAL BACKGROUND

## A. Plaintiff's Initial Complaint (ECF No. 1) and First Amended Complaint (ECF No. 4).

On August 8, 2022, Plaintiff, through her counsel, filed a Complaint against Defendant initiating this matter. (ECF No. 1). In this Complaint, Plaintiff brought a claim for religious discrimination for failure to accommodate under the Michigan Elliott-Larsen Civil Rights Act of 1976, MCL 37.2101, *et seq*.

On October 6, 2022, Plaintiff filed an Amended Complaint which included two additional counts against Defendant. (ECF No. 4) The first was another state law religious discrimination claim under the Michigan Elliott-Larsen Civil Rights Act. (ECF No. 4, PageID.16). The second was a federal discrimination claim under

Title VII, which Plaintiff added after receiving her Right to Sue Letter from the Equal Employment Opportunity Commission. (ECF No. 4, PageID.27).

On November 23, 2022, Defendant filed an Answer to Plaintiff's First Amended Complaint, which denied the bulk of Plaintiff's allegations and asserted several affirmative defenses. (ECF No. 8).

**B. Plaintiff's Second Amended Complaint (ECF No. 21) and Defendant's Motion to Dismiss (ECF No. 27).**

On June 9, 2023, Plaintiff filed a Second Amended Complaint (ECF No. 21), which dropped both of her state law claims under the Michigan Elliott-Larsen Civil Rights Act and only asserted one federal religious discrimination claim under Title VII: a failure to accommodate claim. (ECF No. 21, PageID.264).

One June 23, 2023, Defendant filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (ECF No. 27). On July 7, 2023, Plaintiff filed a Response to Defendant's Motion to Dismiss (ECF No. 32) and on July 28, 2023, Defendant filed a Reply in support of their Motion. (ECF No. 35).

**C. Plaintiff's supplemental briefing.**

On October 19, 2023, Plaintiff filed a Notice of Order and Factual Admissions as supplemental briefing to Defendant's Motion to Dismiss. (ECF No. 44). In it, Plaintiff argued that "[s]ince the parties concluded briefing Defendant's Motion to Dismiss, two critical events have occurred that render the relief sought in Defendant's Motion to Dismiss moot." (ECF No. 44, PageID.807).

First, Plaintiff argued that Magistrate Judge Anthony P. Patti, in granting Plaintiff's earlier Motion to Compel Supplemental Discovery Responses in this case (ECF No. 34), had also ruled on the sufficiency of Plaintiff's pleadings regarding her disparate treatment claim. Plaintiff argued, therefore, that Judge Patti's Order "renders moot Defendant's Motion to Dismiss alleging that Plaintiff has not adequately pled Title VII claims." (ECF No. 44, PageID.807, 810).

Plaintiff is mistaken. As stated more fully in this Court's Order granting Defendant's objection to Plaintiff's erroneous interpretation of Judge Patti's Order (ECF No. 52), Judge Patti only ruled on the discovery Plaintiff was entitled to on her disparate treatment claim, but not on the sufficiency of Plaintiff's pleadings. Therefore, Judge Patti's Order has no effect on Defendant's present motion.

Next, Plaintiff argued that the deposition of Jeffrey Laroca, an attorney Defendant hired to approve or deny requests for religious accommodations submitted by Defendant's employees, also mooted Defendant's motion. (ECF No. 44, PageID.810). Plaintiff argued that Laroca's deposition "revealed that Defendant indisputably failed to accommodate Plaintiff's religious accommodation request," thereby confirming that Plaintiff sufficiently pled a claim for relief. (*Id*).

Plaintiff is again mistaken. In ruling on a motion to dismiss, courts may consider the plaintiff's complaint, documents referenced in the complaint which are central to the plaintiff's claims, matters of which a court may take judicial notice,

4

documents that are a matter of public record, and letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015). As Jeffrey Laroca's deposition is none of these things, it is not relevant to Defendant's Motion to Dismiss.

The Court, therefore, analyzes the merits of Defendant's motion without consideration of either event.

## II. STATEMENT OF FACTS

Because this is a motion to dismiss, the facts recited below are stated as they are alleged in Plaintiff's Second Amended Complaint. Plaintiff is a nurse who, at the time the incident occurred, was employed by Defendant. (ECF No. 21, PageID.254). On October 28, 2021, Defendant announced a company-wide mandate that its employees receive the COVID-19 vaccine. (ECF No. 21, PageID.255).

On November 1, 2021, three days after the mandate was announced, Plaintiff emailed her intent to request a religious accommodation exempting her from Defendant's vaccine mandate. (*Id.*) Her request, which had been drafted earlier in anticipation of a vaccine mandate, stated:

> My sincerely held religious belief for my accommodation stems from the biblical teaching of my spiritual leader Jesus Christ . . . 1 Corinthians 3:17: 'If anyone destroys God's temple, God will destroy him. For God's temple is holy, and you are that temple' . . . The ingredients in the vaccines can cause serious harm and even death to our body. Having a blood clotting disorder makes this a VERY

important concern to me . . . [G]etting the COVID-19 vaccine would go against my conscience and against God's law.

(ECF No. 21, PageID.254). On November 19, 2021, Defendant denied Plaintiff's

accommodation request stating:

> You have failed to identify a religious belief, practice, or observance that prohibits you from being vaccinated against COVID-19…[O]ur records reflect that you have received a three-dose series of Hepatitis B vaccine…If there is additional information that you would like us to consider in connection with your request, please submit this information as soon as possible. *If additional information is not received <u>within two days</u> from the date of this denial, this decision will be considered final.*

(ECF No. 21, PageID.255). Plaintiff appealed the denial, writing:

> This is my letter to give additional information to support my accommodation request . . . I always seek to honor God. I walk and live according to God's laws. My body is the temple of the Holy Spirit, and taking the COVID-19 vaccine, would be defiling my body . . . I will not defile my body with unwanted intrusions. I take the upmost care of my body and continue to honor God and the temple he gave me. Taking the COVID-19 vaccine would go against that sincere religious belief . . . As a believer who may have had childhood vaccines or even a Hepatitis B vaccine many years ago, that does not contradict or negate the veracity of my individual belief and my desire to abstain from the COVID-19 vaccine.

(ECF No. 21, PageID.256). On December 6, 2021, Defendant denied Plaintiff's

appeal, noting that Plaintiff did not set forth "a religious belief, practice, or

observance [that] deems the [COVID-19] vaccine defiling." (*Id.*) Despite the denial,

Plaintiff still refused the COVID-19 vaccine, and on January 4, 2022, she was

terminated by Defendant. (*Id.*)

Plaintiff alleges that, throughout this process, she attempted to engage with Defendant to explore alternative non-vaccine safeguards against COVID-19 such as masking and periodic testing, but Defendant refused her efforts. (ECF No. 21, PageID.259).

Plaintiff argues that Defendant's failure to grant her a religious exemption to the vaccine mandate, and her subsequent termination, constitutes religious discrimination under Title VII. (ECF No. 21, PageID.266). Plaintiff brings this present action seeking damages including backpay, reinstatement, pre- and post-judgment interest, punitive damages, compensatory damages, and attorneys' fees and costs. (ECF No. 21, PageID.268).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual

allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The Sixth Circuit has explained that, "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to the plaintiff's claims[1], (2) matters of which a court may take judicial

[1] Plaintiff's SAC references: (1) Plaintiff's initial religious accommodation request (ECF No. 21, PageID.254); (2) Defendant's denial letter (ECF No. 21, PageID.255); (3) Plaintiff's letter appealing the denial (ECF No. 21, PageID.256); and (4) Defendant's letter denying Plaintiff's appeal (ECF No. 21, PageID.256). Since all

8

notice, (3) documents that are a matter of public record, and (4) letters that constitute

decisions of a governmental agency. *Thomas*, 621 F. App'x at 829; *Armengau v.*

*Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what

matters fall within the pleadings for purposes of Rule 12(b)(6).").

# IV. DISCUSSION

## A. The elements of a failure to accommodate claim under Title VII.

Title VII of the Civil Rights Act of 1964 renders it unlawful for employers:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). These two provisions are "often referred to as the 'disparate

treatment' (or 'intentional discrimination') provision and the 'disparate impact'

provision" and they are "the only causes of action under Title VII." *E.E.O.C. v.*

*Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015).

---

four of these documents are essential to Plaintiff's claim, this Court will consider
them in assessing Defendant's Motion to Dismiss.

Plaintiff styles her claim as a "Religious Discrimination–Failure to Accommodate" claim under Title VII (ECF No. 21, PageID.264), but as the Supreme Court has noted, a failure to accommodate claim is a species of disparate-treatment claim. *Id*. at 773 (analyzing the plaintiff's claims as a "disparate-treatment claim[] based on a failure to accommodate").

To establish a prima facie failure to accommodate claim, a plaintiff must show: "(1) that the employee holds a sincere religious belief that conflicts with an employment requirement, (2) that the employee informed the employer about the conflict, and (3) that the employee was discharged or disciplined for failing to comply with the requirement." *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 355–56 (6th Cir. 2020); *see also Bolden v. Lowes Home Centers, LLC*, 783 F. App'x 589, 597 (6th Cir. 2019); *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)). Once the plaintiff has made this showing, the burden shifts to the defendant to show "that it could not reasonably accommodate the employee without undue hardship." *Tepper*, 505 F.3d at 514 (quoting *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002)).

Defendant contends that Plaintiff has failed to plead all three elements necessary to establish a prima facie case. (ECF No. 27, PageID.417).

**B. Plaintiff has not pled that she holds a sincere religious belief that conflicts with Defendant's vaccine mandate.**

Defendant argues that Plaintiff failed to plead that she holds "a sincere religious belief that conflicts with an employment requirement." *Stanley*, 808 F. App'x at 355–56. Plaintiff, on the other hand, believes that she has pled sufficient facts about her "[r]eligiosity" to show she has a sincere religious belief that conflicts with receiving the COVID-19 vaccine. (ECF No. 32, PageID.537–538).

At very least, she argues, there is a "genuine dispute of material fact as to whether [she] possessed a sincere religious belief" to that effect. (ECF No. 32, PageID.538). To support this argument, she cites a litany of cases, which hold that "[t]he sincerity of an employee's stated religious belief is usually not in dispute and is generally presumed or easily established." *Keene v. City & Cnty. of San Francisco*, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023). This Court agrees that "judging the sincerity of a person's religious beliefs is a quintessential fact question," which is the domain of the jury. *Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 700 (M.D. Tenn. 2020) (internal quotation marks omitted); *see also Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990) ("[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith") (quoting *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989)).

The dispositive question here, however, is not whether Plaintiff's beliefs are sincere, but whether they are religious in nature, which is a question well within the

Court's domain. *See Keene*, 2023 WL 3451687, at *2 (noting that "the task of a court is to decide whether the beliefs professed by [an employee] … are in [the believer's] own scheme of things, religious"). After analyzing Plaintiff's initial request for accommodation (Exhibit 1, ECF No. 28-1), Plaintiff's appeal (Exhibit 3, ECF No. 28-3), and the relevant case law, the Court concludes that Plaintiff's request is medical and not religious.

To start, the Court notes that Plaintiff's request is littered with conclusory statements claiming her request for accommodations are religious in nature. For example, she begins her request by stating, "[m]y sincerely held religious belief for my accommodation stems from the biblical teaching of my religious spiritual leader Jesus Christ" (*Id*.), but courts "need not accept as true a legal conclusion couched as a factual allegation" when deciding a Rule 12(b)(6) motion. *Handy-Clay*, 695 F.3d at 539. Similarly, Plaintiff quotes various lines of scripture throughout her request (*Id*.), but an accommodation request may still be medical in nature, even when clothed in a veneer of Bible verses. As such, the Court focuses on the substance of Plaintiff's request in concluding that it is not religious in nature.

Plaintiff's request offers two primary arguments. First, Plaintiff believes she has a religious mandate to take proper care of her health and body, and that taking the COVID-19 vaccine would violate this mandate because it is unhealthy. This argument consists of two components.

The first, is that Plaintiff believes that scripture requires her to take care of her body. Plaintiff conveys this by citing several Bible verses, which refer to the human body as God's temple and espouse the value of protecting it:

> 1 Corinthians 6:19-20 "Don't you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; you were bought at a price. Therefore, honor God with your bodies."

> 1 Corinthians 3:17 "If anyone destroys God's temple, God will destroy him. For God's temple is holy, and you are that temple.

> 1 Timothy 4:8 "For while bodily training is of some value, godliness is of value in every way, as it holds promise for the present life and also for the life to come."

(*Id*.) This reference to scripture establishes that Plaintiff has a religious belief that she must take care of her health and body. And since it is not the Court's role to question either the validity or sincerity of this belief at the Rule 12(b)(6) stage, this component of her first argument is not problematic.

Plaintiff's problems arise from the second component: the reason she thinks taking the COVID-19 vaccine violates her religious beliefs. *Petermann v. Aspirus, Inc.*, 2023 WL 2662899 (W.D. Wis. Mar. 28, 2023) is illustrative. The plaintiff there also claimed a sincerely held religious belief that prevented her from taking the COVID-19 vaccine:

> Plaintiff Petermann is a Christian who believes, as she has discerned from prayer and study of Scripture, that her body is a Temple of God. Plaintiff Petermann believes it would violate the sanctity of her conscience to take the vaccine.

13

*Id*. at *1. The court noted that a "religious belief that the body is a temple of God is not in itself inconsistent with receiving a vaccine" since many people "hold that belief without also believing that receiving a vaccine defiles the body." *Id*. at *2. Rather, the important question is:

> [w]hether the employee's belief that the vaccine qualifies as mistreatment is itself based in religion. If [the plaintiff] believed that the vaccine defiled her body because it was unhealthy or unsafe, that would be a medical objection, not a religious objection. But if her objection to the vaccine was rooted in a belief that she must remain as God made her, that would be sufficient to show a religious conflict at the pleading stage.

*Id*. at *2 (internal citations and quotation marks omitted). The court there ultimately did not need to make this determination since the plaintiff conceded that her employer had given her an exemption from their vaccine mandate. Here, however, Plaintiff's objections to the vaccine are clearly medical.

Plaintiff implies that the reason taking the vaccine violates her sincere religious belief that she must "take the upmost car[e] of" her body (ECF No. 28-3), is because "[t]he ingredients in the vaccines can cause serious harm and even death to our body." (ECF No. 28-1). This is a clear medical judgment on the safety of the vaccine that is entirely areligious. As if to confirm the medical nature of her requested accommodation, in the very next sentence, Plaintiff writes that her

concerns about the safety of the vaccine are heightened by her "[h]aving a blood clotting disorder." (*Id*.)

The only point at which Plaintiff comes even remotely close to alleging that she has a belief that she must remain as God made her is, in her appeal letter, when she states:

> Getting the Cov[i]d-19 vaccine goes against my God given conscience. I will not alter God's design. I am wonderfully and fearfully made. Therefore, I take the BEST care of my individual body." (ECF No. 28-3).

Plaintiff argues this reference to "not alter[ing] God's design" (*Id*.) shows that Plaintiff holds a belief that she must not get the vaccine to remain as God made her. (ECF No. 32, PageID.542–43). In the following paragraph, however, Plaintiff concedes that she received vaccines as a child and, only a few years ago, received the Hepatitis B vaccine. (ECF No. 28-3).  Plaintiff's religious believes are, of course, free to grow and evolve over time, and the Court recognizes that "[a] religious belief need not be consistent or rational to be protected under Title VII." *Keene*, 2023 WL 3451697 at *2. But, at no point in her accommodation letter or her appeal does Plaintiff claim that her beliefs have evolved such that she will no longer receive any vaccines as to not further alter God's design.

Instead, she notes only that her beliefs have been modified such that she now has a "desire to abstain from the Covid-19 vaccine" in specific. (ECF No. 28-3). This, once again, suggests that Plaintiff's refusal to receive the COVID-19 vaccine

remains rooted in her belief that it is unsafe to her, which is a medical judgment not protected by Title VII.

The Court breaks no new ground in its conclusion. For instance, in *Lucky v. Landmark Med. of Michigan, P.C.*, 2023 WL 7095085 (E.D. Mich. Oct. 26, 2023) (Friedman, J.,) and *Alexa v. City of Ann Arbor*, 2023 WL 7386432 (E.D. Mich. Nov. 8, 2023) (Parker, J.,), two other Covid-19 vaccine mandate cases in the Eastern District of Michigan, the courts both granted the defendant's motion to dismiss without a hearing.

Courts around the country have also repeatedly found beliefs similar to Plaintiff's to be medical in nature. Take, for example, *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458 (M.D. Pa. 2022). There, the Plaintiff objected to her employers COVID-19 nasal swab testing requirement claiming that the testing:

> [V]iolates my sincerely held religious belief and I believe testing in this manner is a bad choice for my health and body. I believe there are chemicals/carcinogens associated with the swab and testing material. I'm afraid of the side effects and potential future health risks these chemicals may cause with this repetitive use. I believe this testing is toxic and it's only EUA approved, therefore I do not want to be part of an experiment.

*Id*. at 463. The Court remarked that the plaintiff's statement "only reinforce[d] that her opposition stems from her medical beliefs" and that "it would be a step too far to count everything [the plaintiff] believes about healthy living as a religious practice." *Id*. at 465. Plaintiff believes that *Finkbeiner* is distinguishable because the

plaintiff there objected to a nasal swab testing requirement, while, here, Plaintiff seeks accommodations for a vaccine mandate. (ECF No. 32, PageID.542). This distinction is immaterial.

The specific accommodation requested has no bearing on whether the reasons given for it are, at their core, religious or medical. The plaintiff in *Finkbeiner* sought a medical exemption disguised as a religious one and Plaintiff seeks the same here. Put simply, "the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion." *Passarella v. Aspirus, Inc.*, 2023 WL 2455681 at *6 (W.D. Wis. Mar. 10, 2023); *see also id* at *1(dismissing two of the plaintiffs' claims because "their exemption requests show that their objections to the COVID-19 vaccine were based on their medical judgment that the vaccine was unsafe"); *Blackwell v. Lehigh Valley Health Network*, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023) (finding that the plaintiff's request for exemption from her employer's COVID-19 nasal swab testing mandate "challenges Defendant's ***factual*** and ***scientific*** basis for imposing the testing requirement" which "is not religious") (emphasis in the original)[2].

---

[2] Plaintiff believes that *Blackwell* is distinguishable from the present dispute because, like in *Finkbeiner*, the plaintiff there requested exemption from nasal swab testing and not vaccination. For the reasons discussed above, this distinction is likewise immaterial. (ECF No. 32, PageID.542).

The medical nature of Plaintiff's beliefs becomes more apparent when juxtaposed with the truly religious beliefs that courts have refused to dismiss at the 12(b)(6) stage. For example, in *Collins v. Tyson Foods, Inc.*, 2023 WL 2731047 (W.D. Ky. Mar. 30, 2023) the plaintiff requested an exemption from his employer's vaccine mandate based on a religious belief that he could not use a vaccine that "made use either in production or testing of fetal cell lines developed from tissues derived from aborted fetuses." *Id*. at *7; *see also Keene*, 2023 WL 3451687 at *2 (overturning the district court's decision to dismiss the plaintiff's claim after the record showed that they swore "they are Christians who "believe in the sanctity of life" and could not receive a vaccine derived "from aborted fetal lines").

The religious nature of this exemption is apparent because the plaintiff's refusal to get the vaccine has nothing to do with their belief in its safety. If one credits the plaintiff's purported belief as sincere, even if she believed the vaccine was entirely safe and entirely effective, her religious belief prohibiting the use of fetal cells would still prevent her from getting vaccinated. In contrast, under Plaintiff's belief system, if she believed that the vaccine was safe and effective, she would have no qualms with getting vaccinated.

The second of Plaintiff's two arguments as to why she requires a vaccine exemption is that "getting the COVID-19 vaccine would go against [her] conscience," which is against her religious beliefs. She notes:

> We should never go against our conscience. As with Paul's teaching in the bible. "No God will judge everyone by the light they have been given and sinned against. Hearing the Law is not enough; it is the doers of the Law who will be justified. With the Gentiles, not having the Law is no excuse. They instinctively know what is right and wrong and they all have violated what they know to be right, as their consciences affirm."
>
> Romans 2:14-15 "Those who do not have God's Law still have an inner sense of right and wrong that condemns them when they violate it."

(ECF No. 28-1, PageID.434). By quoting these verses, Plaintiff appears to suggest that it would violate her religious beliefs to, at any time and in any matter, disobey her conscience as to what is right and what is wrong. Courts have consistently held that this type of belief is not entitled to Title VII protection. For example, in *Passarella*, the court dismissed the claim of one of the plaintiffs who stated that she refused to get the vaccine because:

> Although it comes highly recommended by physicians, it goes against my conscience to receive it; therefore, I abide by that, as I know it is a message from God. James 4:17 states that failing to obey our conscience is a sin. Therefore, this means receiving the vaccine would not be acting in accordance with God. It would be a sin for me to receive it.

*Passarella*, 2023 WL 2455681 at *3.

Similarly, in *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487 (3d Cir. 2017), the Third Circuit found that the plaintiff's claim that taking the influenza vaccine "would violate his conscience as to what is right and what is wrong" was not a protected religious belief. *Id*. at 492; *see also Finkbeiner*, 623

F.Supp.3d at 465 (dismissing the plaintiff's claim where she asserted a "God-given right to make [her] own choices" because that "would amount to a blanket privilege and a limitless excuse for avoiding all unwanted … obligations") (internal quotation marks omitted).

Courts have good reason for declining to protect these types of claims. To hold that a plaintiff's belief that she cannot disobey her conscience is a protected religious belief under Title VII would give her, and all others who claim this same belief, carte blanche to object to and request accommodations for anything that even mildly offends their sensibilities. As Courts have noted, "the very concept of ordered liberty precludes [courts] from allowing any person a blanket privilege to make [her] own standards on matters of conduct in which society as a whole has important interests." *March v. Securitas Sec. Servs. USA*, 2023 WL 5417778, at *2 (W.D. Mich. July 28, 2023)[3] (quoting *Blackwell*, 2023 WL 362392 at *4).

Therefore, Plaintiff's broad claim that she cannot disobey her conscience is not a religious belief entitled to protection under Title VII. Since neither of Plaintiff's two arguments suffices to establish that she holds a sincere religious belief that precludes her from receiving the COVID-19 vaccine, Plaintiff's SAC fails to state a claim for which relief can be granted.

---

[3] *report and recommendation approved*, 2023 WL 5379747 (W.D. Mich. Aug. 22, 2023):

**C. Plaintiff has pled that she informed her employer about her conflict regarding the vaccine mandate.**

To plead a prima facie claim of religious discrimination for failure to accommodate, a plaintiff must establish that they informed their employer about the conflict and the need for an accommodation. *Stanley*, 783 F. App'x at 597. Defendant argues that "Plaintiff failed to indicate in her accommodation request … exactly how her religion conflicted with the Red Cross's vaccine requirement, and in doing so also failed to inform her employer about the conflict." (ECF No. 27, PageID.417).

To plead a failure to accommodate claim, plaintiffs need not show that they "request[ed] an accommodation in a particular manner" *Brown v. MGM Grand Casino*, 2023 WL 5489023, at *2 (E.D. Mich. Aug. 24, 2023) (Roberts, J.). Rather, they need only establish that the request "sufficiently notifie[d] the employer of the employee's need for an accommodation." *Id.* This is not an onerous burden.

In *Brown*, the court found it sufficient that, on a phone call, the plaintiff expressed to the defendant that "getting vaccinated interfered with his sincerely held beliefs" and "followed up with an email saying that he is entitled to choose what he puts in his body." *Id*. at 3. In comparison, Plaintiff's accommodation request letter, which appeals to Jesus Christ, quotes various Bible verses, and speaks of herself as a Christian (ECF No. 28-1, PageID.434), gives Defendant much more detail linking her accommodations request to religion and, therefore, satisfies this requirement.

21

**D. Plaintiff has pled that she was terminated for failure to comply with the vaccine requirement.**

To satisfy the third element of a failure to accommodate claim, a plaintiff must plead that they were terminated because of their failure to comply with the requirement for which they sought an accommodation. *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x at 355–56. Defendant's motion argues that Plaintiff has failed to plead all three elements of a failure to accommodate claim. (ECF No. 27, PageID.417).[4] Defendant, therefore, believes that Plaintiff has failed to plead this final element as well.

Plaintiff's SAC states that "Defendant attempted to force Plaintiff to vaccinate herself to avoid losing her job" (ECF No. 21, PageID.259), and that, as a "result of Defendant's violation of Title VII, Plaintiff has been denied employment." (ECF No. 21, PageID.267). Both statements assert that Plaintiff was terminated based on her refusal to comply with Defendant's vaccine mandate. Therefore, Plaintiff has sufficiently pled this last element of her failure to accommodate claim. Nonetheless, since Plaintiff failed to establish that her accommodation request was religious in nature she is not entitled to relief under Title VII.

---

[4] Defendant's Motion to Dismiss states that Plaintiff failed to satisfy all three of the elements required for her claim, but Defendant's Reply in support of their Motion to Dismiss states that Plaintiff failed to plead only the first and second elements of her claim. (ECF No. 35, PageID.647). In the interest of thoroughness, the Court will address this third element briefly.

**E. Plaintiff's attempt to now assert a traditional disparate treatment claim also fails as a matter of law.**

Lastly, Defendant argues that, to the extent that Plaintiff seeks to turn their failure to accommodate claim into a traditional disparate treatment claim, this disparate treatment claim also fails as a matter of law. (ECF No. 27, PageID.426).

As discussed above, in *Abercrombie*, the Supreme Court explained that there are only two causes of action under Title VII: disparate treatment claims and disparate impact claims. *Abercrombie*, 575 U.S. at 771. The Court there also held that a failure to accommodate is a means of showing disparate treatment. *Id.* at 773.

Plaintiff's SAC alleges only one count of disparate treatment by Defendant, which she labels: "Religious Discrimination—Failure to Accommodate," Nonetheless, Plaintiff believes that since, under *Abercrombie*, a "failure to accommodate claim encompasses a disparate treatment claim," this "opens the door" for her to, in her Response to Defendant's Motion to Dismiss, set forth an entirely separate theory of religious discrimination. (ECF No. 32, PageID.551).

Plaintiff misunderstands *Abercrombie*. As many lower courts have noted, "under Title VII, a failure to accommodate claim is a sub-species of disparate treatment." *Hittle v. City of Stockton*, 2018 WL 1367451, at *8 (E.D. Cal. Mar. 16, 2018); *see also Kehren v. Olmsted Med. Ctr.*, 2023 WL 2776094, at *4 (D. Minn. Apr. 4, 2023) (noting that "[a] claim for failure to reasonably accommodate an employee's religion is distinct from a religious discrimination claim") (citing *Sturgill*

*v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1034 (8th Cir. 2008)); *Dykzeul v. Charter Commc'ns, Inc.*, 2019 WL 8198218, at *10 (C.D. Cal. Nov. 18, 2019) (distinguishing between failure to accommodate claims and other disparate treatment theories because "it would be superfluous if the same facts supported liability under Title VII for both failure to accommodate and disparate treatment").

Merely pleading one type of disparate treatment claim does not "open the door" for Plaintiff to set forth entirely new theories of her claim this late in the proceedings.

Moreover, even if the Court did allow Plaintiff to advance an entirely new theory of liability this late in the proceeding, this new theory would also not survive a 12(b)(6) motion. In the absence of direct evidence, to plead a traditional disparate treatment claim, as Plaintiff seeks to do, plaintiffs must establish: "(1) membership in a protected class; (2) that [they] suffered from an adverse employment action; (3) that [they were] qualified for the position; and (4) that a person who was outside the protected class and similarly situated to [them] in all relevant respects was treated better than [they were]." *Hudson v. City of Highland Park, Michigan*, 2018 WL 6268870, at *4 (E.D. Mich. Nov. 30, 2018) (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007)). Plaintiff's SAC does not plead the latter two elements. Plaintiff does not allege that she was qualified for her position with

Defendant, and she does not allege that a person outside of her protected class was treated better than her.

Plaintiff argues that this last element is satisfied:

> [B]ecause Defendant granted religious accommodations to other employees, [therefore] there is a giant open question as to whether Defendant imposed its subjective standard of religiosity upon Plaintiff by granting the religious accommodation requests of other similarly situated employees whose religious beliefs differed from Plaintiff.

This argument fails for two reasons. First, Plaintiff only advances this argument in her brief in Response to Plaintiff's Motion to Dismiss, which is not a pleading and is not considered at the Rule 12(b)(6) stage. *Agema*, 826 F.3d at 331. Second, the relevant pleading standard under *Iqbal* is not whether there is a "giant open question" as to Plaintiff's claim, but whether Plaintiff pleads sufficient facts to state a claim which is plausible. *Iqbal*, 556 U.S. at 678. Plaintiff has not done so here.

Defendant mandated that all its employees, religious or not, receive the COVID-19 vaccine unless they provided Defendant with a legitimate religious need for an exemption. Plaintiff's request for an exemption, although interspersed with religious language, was at its core, rooted in Plaintiff's medical judgment that the vaccine was unhealthy for her. Thus, Defendant's denial of this request does not establish a plausible claim that she was treated adversely because of her membership in a protected class, nor does it plausibly establish that someone outside of Plaintiff's protected class was treated differently from her.

Accordingly, Plaintiff's attempts to turn her failure to accommodate claim into a traditional disparate treatment claim also fails to save her SAC.

## V. CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. (ECF No. 27).

SO ORDERED.

Dated: December 15, 2023                    s/Paul D. Borman
                                            Paul D. Borman
                                            United States District Judge

26