UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIMEE STURGILL,

    Plaintiff,

                                     Case No. 22-cv-11837

v.

                                     Hon. Sean F. Cox

THE AMERICAN RED CROSS,          United States District Court Judge

    Defendant.

_____/

**OPINION & ORDER**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 79) AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 80)**

Aimee Sturgill was fired from her job as a nurse with the American Red Cross after she refused to get vaccinated for COVID-19. Sturgill now seeks back pay, front pay or reinstatement, and emotional-distress & punitive damages from Red Cross for discriminating against her religious beliefs in violation of title VII of the Civil Rights Act ("Title VII"). Both parties now seek summary judgment on liability and Red Cross alternatively seeks summary judgment on back pay, front pay, and damages. Neither party is entitled to summary judgment on liability, nor is Red Cross entitled to summary judgment on back pay, front pay, or punitive damages. But Red Cross *is* entitled to summary judgment on emotional-distress damages.

**BACKGROUND**

Sturgill worked for Red Cross as a nurse in 2021, and she came to believe that her employer would soon require all its employees to get vaccinated against the COVID-19 virus. Sturgill accordingly submitted a document entitled "Religious Workplace Accommodation Request Form" to Red Cross in September 2021. (ECF No. 79-3, PageID.2114). Sturgill's accommodation request takes issue with "[t]he possibility of mandatory vaccination for

1

employment at American Red Cross," and requests "an exemption from the COVID-19 vaccine."

(*Id.* at 2117). Sturgill's accommodation request also discusses her religious views:

> My sincerely held religious belief for my accommodation stems from the biblical teaching of my religious spiritual leader Jesus Christ. We begin our decision-making with hearts of faith. We should trust such decisions to rest between the Christian and his Maker. We are stewards of God's blessing of life.
>
> There are several bible verses that come to mind when making my informed decision regarding the accommodation request . . . .
>
> 1 Corinthians 6:19-20 "Don't you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God?" . . .
>
> 1 Corinthians 3:17 "If anyone destroys God's temple, God will destroy him. For God's temple is holy, and you are that temple."
> . . . .
>
> The ingredients in the vaccine can cause serious harm and even death to our body. Having a blood clotting disorder, myself, makes this a VERY important concern for me. Life is a gift from God and that leads us to take the upmost care of our own bodies. ALL human life has intrinsic value.
>
> 2 Timothy 1:7 "For God has not given us a spirit of fear, but of power and of live and of a sound mind."
>
> By trusting His perfect design, I can make decisions from a place of education. This helps empower me to make healthy choices for my life.
> . . . .
>
> . . . As described on the previous page, getting the COVID-19 vaccine would go against my conscience and God's law.
>
> I am requesting an exemption from the COVID-19 vaccine. By taking the upmost care for my body allows me to continue to honor God and the temple he gave me without going against my conscience.

(*Id.* at 2116–17 (first ellipses in original)).

A few weeks after Sturgill submitted her accommodation request, Red Cross announced that all its employees "will need to be fully vaccinated or have received a first dose of a COVID-19 vaccine by December 31 to continue working in 2022." (ECF No. 79-2, PageID.2111). Red

Cross's announcement also stated, "While we will continue to have a medical and religious accommodation process for employees, we will not offer testing as an alternative to vaccination, as this option would make us non-compliant with known federal, state and local regulations." (*Id.*).

Red Cross now asserts that its vaccination mandate was prompted by a federal executive order that "require[ed] entities contracting with the federal government to ensure their employees were vaccinated against COVID-19 by January 18, 2022." (ECF No. 81, PageID.2693). But the executive order Red Cross cites merely directs federal contractors to comply "with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force." Exec. Order No. 14042, 86 Fed. Reg. 50985, 50985 (Sept. 14, 2021). And the subsequent Safer Federal Workforce Task Force Guidelines "require[d] 'COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation,' such as for a disability *or religious objection*." *Kentucky v. Biden*, 23 F.4th 585, 590 (6th Cir. 2022) (citation omitted) (emphasis added) (quoting Safer Fed. Workforce Task Force, *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors* (Sept. 24, 2021), https://perma.cc/2R27-9J4U).

Red Cross's director of human resources, Heather Kayne, would later testify at her deposition in this action that outside counsel Jeffrey Larocca "made all the decision regarding anybody's religious accommodation request to be exempt from the COVID-19 vaccine." (ECF No. 80-7, PageID.2453). Larocca would also be deposed in this action, and he would testify that he had performed employment-related legal work for Red Cross for nearly thirty years. And Larocca would agree that "Red Cross essentially outsourced decision making on religious accommodation to" him. (ECF No. 80-6, PageID.2381).

3

Whether Red Cross ever reviewed Sturgill's September 2021 accommodation request is unclear, but she submitted a substantively identical request in November 2021. Outside counsel Larocca reviewed that request, and he would testify that he relied on "the guidance of the EEOC and the history of religious accommodation law" to resolve it. (*Id.* at 2389). Larocca would also explain that Sturgill's objection to Red Cross's vaccine mandate "was personal, it was medical, and while it had references to religiosity, it did not meet the test that the EEOC puts out in its guidance and in the various case law that [he] was reading and the information that was provided and so forth." (*Id.* at 2400). But Larocca would concede that he did not know whether Sturgill had "lied about her religious beliefs," and that he could not "tell whether or not somebody's religious beliefs are true or false." (*Id.* at 2402).

Red Cross accordingly denied Sturgill's accommodation request in November 2021. (ECF No. 79-6). Sturgill then sent Red Cross a supplemental letter that, like her initial accommodation request, discusses her religious beliefs:

> Again, my sincerely held religious belief stems from the biblical teaching of my religious spiritual leader Jesus Christ. I begin my individual decision-making with a heart of faith and trust that such decisions should always rest between the Christian (myself) and my Maker. My beliefs are MY beliefs. I always seek to honor God. I walk and live according to God's laws. My body is a temple of the Holy Spirit, and taking the COVID-19 vaccine, would be defiling my body, including violating my individual religious beliefs. I will not defile my body with unwanted intrusions.
>
> I take the upmost care of by body and continue to honor God and the temple he gave me. Taking the COVID-19 vaccine would go against that sincere religious belief. We should NEVER go against our conscience. Free will and freedom of conscience are gifts from God. Life is a gift from God that leads us to take the upmost care of our own bodies.
> . . . .
>
> I already have a religious exemption. I am exempt from any behavior/actions that is in conflict with my religious beliefs. Getting the COVID-19 vaccine goes against my God-given conscience. I will not alter God's design. I

4

am wonderfully and fearfully made. Therefore, I will take the BEST care of my individual body.

(ECF No. 79-7, PageID.2133). Sturgill's supplemental letter concludes, "The only accommodation option I am asking for is continued masking and self-symptom screening, which is the method I have been successfully utilizing since 2020." (*Id.*).

Red Cross confirmed its denial of Sturgill's accommodation request in December 2021 and fired her the next month. Red Cross's termination letter explains, "You have not submitted vaccination information and documentation in HR Now as of today. Therefore, this letter is to confirm that you are separated from your position with the American Red Cross effective January 4, 2022." (ECF No. 79-9, PageID.2137).

This action followed in August 2022, and it was initially assigned to District Judge Paul Borman. Sturgill filed the operative complaint in June 2023, and it seeks "damages, including back pay, reinstatement or front pay . . . , punitive damages, and compensatory damages" for religious discrimination in violation of Title VII. (ECF No. 21, PageID.268).

At the motion-to-dismiss stage, the parties disputed the kind of Title VII claim that Sturgill had attempted to plead. Judge Borman held that Sturgill had attempted to plead a failure-to-accommodate claim, which remedies an employer's failure to accommodate an employee's religious beliefs. But Judge Borman determined that Sturgill's "request for an exemption, although interspersed with religious language, was at its core, rooted in [her] medical judgment that the vaccine was unhealthy for her," and accordingly dismissed this action. *Sturgill v. Am. Red Cross*, No. 22-cv-11837, 2023 WL 8701239, at *11 (E.D. Mich. Dec. 15, 2023).

On appeal, the Sixth Circuit agreed that Sturgill had attempted pled a Title VII failure-to-accommodate claim but disagreed with Judge Borman about whether she had successfully done so. Per the Sixth Circuit, Judge Borman's "disregard of Sturgill's stated religious reason for

5

seeking an accommodation because the request was, in [Judge Borman]'s view, 'medical in nature,'" was impermissible at the pleading stage. *Sturgill v. Am. Red Cross*, 114 F.4th 803, 809 (6th Cir. 2024). The Sixth Circuit accordingly remanded, and this action proceeded to discovery.

Sturgill was deposed, and she testified that she is a practicing Lutheran who regularly attends St. Mark's Lutheran Church in Flatrock, Michigan. Sturgill also testified that she believes the COVID vaccine would defile her body because she "prefer[s] to use [her] God-given innate immunity that [she] was given and blessed by God to use in place of the COVID-19 vaccine." (ECF No. 80-3, PageID.2286–87). But Sturgill conceded that she takes medications to treat her sinuses, Crohn's disease, and a blood-clotting disorder.

Discovery also revealed the following information about Sturgill's employment history. After Red Cross fired Sturgill in January 2022, she was unemployed until she began working for Corso Hospice Care in late February 2022. Sturgill then left her job at Corso in April 2022 and began working for Hospice of Michigan later than month. Sturgill subsequently left her job at Hospice of Michigan in December 2022 and began working for Heritage Dialysis in January 2023, where she remains employed now. Red Cross and Corso both paid Sturgill $40 an hour, and Hospice of Michigan paid her $36 an hour. Sturgill was a full-time employee at Red Cross, but she only worked around twenty-five hours per week as a contingent employee at Corso and Hospice of Michigan. And Sturgill currently works between twenty and twenty-five hours per week as a contingent employee for Heritage Dialysis, where she makes $45 an hour.

Discovery closed in August 2023, and this case was reassigned to the undersigned District Judge in June 2024. Both parties now move for summary judgment on liability, and Red Cross alternatively seeks summary judgment on back pay, front pay, and damages. The parties' motions have been fully briefed, and the Court now rules on those motions without oral

6

argument pursuant to E.D. Mich. L.R. 7.1(f)(2).  For the following reasons, neither party is entitled to summary judgment on liability, nor is Red Cross entitled to summary judgment on back pay, front pay, or punitive damages.  But Red Cross *is* entitled to summary judgment on emotional-distress damages.

## STANDARD OF REVIEW

"Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *DeVore v. Univ. of Ky. Bd. of Trs.*, 118 F.4th 839, 844 (6th Cir. 2024).  And "[a] genuine dispute of material fact exists if, taking the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, 'a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In construing the record in the light most favorable to a non-movant, courts "must abstain from making credibility determinations."  *Yazidan v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 644 (6th Cir. 2015).

## ANALYSIS

The issues presented by the parties' motions are whether either party is entitled to summary judgment on liability and whether Red Cross is entitled to summary judgment on front pay, back pay, or damages.

**I.      Liability**

Both parties move for summary judgment on liability.  Sturgill must prove three things to prevail on her failure-to-accommodate claim: (1) that she "holds a sincere religious belief that conflict[ed] with an employment requirement," *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987); (2) that she "informed [Red Cross] about the conflict[]," *id.*; and (3) that such conflict was "a motivating factor in" an employment decision, *EEOC v. Abercrombie & Fitch*

7

*Stores, Inc.*, 575 U.S. 768, 772 (2015). But even if Sturgill can prove these things, her claim still fails if Red Cross can prove "that accommodating [her] religion would [have] impose[d] an undue hardship." *DeVore*, 118 F.4th at 845.

Sturgill argues she is entitled to summary judgment on liability because her sincere religious beliefs conflicted with Red Cross's vaccination mandate; she told Red Cross about this conflict; Red Cross fired her for refusing to get vaccinated for COVID; and accommodating her religious beliefs would not have been unduly hard on Red Cross. Red Cross concedes that it required Sturgill to get vaccinated; that Sturgill told it that her religious beliefs conflicted with its vaccine mandate; that it fired Sturgill for refusing to get vaccinated; and that it could have accommodated her beliefs without undue hardship.[1] But Red Cross maintains that it is entitled to summary judgment on liability because Sturgill only opposed its vaccine mandate for non-religious medical reasons. Thus, with respect to liability, the parties only disagree about whether Sturgill's sincere religious beliefs conflicted with Red Cross's vaccine mandate. For the reasons below, a jury must resolve that disagreement.

### A. Red Cross's Motion

Red Cross is entitled to summary judgment on liability if and only if no reasonable jury that made all credibility determinations in Sturgill's favor would find that her sincere religious beliefs conflicted with Red Cross's vaccine mandate. In support of its motion, Red Cross points out that Sturgill's accommodation request states that the COVID vaccine could harm her considering her blood-clotting disorder, and that she testified she freely takes other medications whose benefits she believes outweigh their risks. Red Cross concludes that Sturgill only opposed its vaccine mandate for non-religious medical reasons.

---

[1] Counsel for Red Cross explicitly waived Red Cross's undue-hardship defense on the record. (ECF No. 79-11).

8

Sturgill responds with proofs showing that she is a practicing Lutheran who regularly attends church; that she believes her body is a temple for the Holy Spirit; and that she believes getting vaccinated for COVID would defile her bodily temple by impermissibly altering God's design. Sturgill's proofs also show that, unlike the illnesses she treats with medication, she believes God gave her natural immunity to COVID. A reasonable jury that made all credibility determinations in Sturgill's favor could conclude from these proofs that she opposed Red Cross's vaccine mandate for religious reasons. *See Sturgill*, 114 F.4th at 810 ("[T]hat there may be both religious and secular reasons for an act does not elevate the latter over the former . . . ."). Concluding otherwise would require an impermissible credibility determination.

Red Cross disagrees and points to *DeVore v. University of Kentucky Board of Trustees*, 118 F.4th at 839. There, the University of Kentucky fired the plaintiff for refusing to comply with the University's COVID policy and the plaintiff brought a Title VII religious-discrimination claim against the University. The Sixth Circuit affirmed summary judgment for the University because the plaintiff's "religious opposition to [the University's COVID] [p]olicy flow[ed] almost entirely from her objections to nasal PCR testing and vaccination, objections she raised before the University informed her that she could comply with [its] [p]olicy via oral swab or saliva tests, and she fail[ed] to account for these alternatives." *Id.* at 848. Here, as in *DeVore*, there is ample evidence that Sturgill opposed *getting vaccinated* for COVID on religious grounds. But unlike in *DeVore*, Red Cross did not permit Sturgill to *get tested* for COVID as an alternative. So *DeVore* does not help Red Cross.

Red Cross also relies on *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487 (3d Cir. 2017). There, the Third Circuit applied the "modern definition of religion" that the court had earlier announced in *Africa v. Pennsylvania*, 662 F.2d

9

1025 (3d Cir. 1981), to a Title VII religious-discrimination claim that stemmed from the plaintiff's termination for refusing to comply with his employer's vaccination requirement. *Id.* at 491. *Africa* held that Title VII only protects putative religious beliefs that: (1) "address[] fundamental and ultimate questions having to do with deep and imponderable matters"; (2) "are 'comprehensive in nature'"; and (3) "are accompanied by 'certain formal and external signs.'" *Id.* (alterations in original) (quoting *Africa*, 662 F.2d at 1032). *Fallon* applied the *Africa* test and concluded that the plaintiff's opposition to his employer's vaccination requirement was "not protected by Title VII." *Id.* at 492.

The Sixth Circuit has never endorsed the *Africa* test, but Sturgill's beliefs easily pass it if the Court accepts her proofs as true, as it must in this posture. Sturgill's beliefs about the Holy Spirit's metaphysical residence in her bodily temple are clearly religious. Every decision in Sturgill's life is guided by her beliefs about the nature of God and His plan for her, and she believes getting vaccinated for COVID would violate God's plan. And Sturgill reads the Bible and attends Lutheran church services. A reasonable jury that made all credibility determinations in Sturgill's favor would find that her opposition to Red Cross's vaccine mandate is protected under *Africa*'s framework.

Red Cross resists this conclusion and cites *Kennedy v. Pei-Genesis*, which applied the *Africa* test in a Title VII religious-discrimination action brought by a plaintiff who was fired for refusing to get vaccinated for COVID. 719 F. Supp. 3d 412 (E.D. Pa. 2024), *appeal docketed*, No. 24-1563 (3d Cir. Mar. 27, 2024). There, the record showed that the plaintiff had refused to get vaccinated because he believed that "ingestion of a medication or other chemical substances defies natural law." *Id.* at 416. But the record also showed that the plaintiff "puts some medicines in his body, but not others." *Id.* at 418. The district court concluded that the plaintiff

10

"ha[d] not demonstrated that his opposition to a Covid vaccine requirement is religious," and granted summary judgment for the employer. *Id.* at 417.

To follow *Kennedy*'s lead here, it must be true that every reasonable jury would find that Sturgill only opposed Red Cross's vaccine mandate for non-religious medical reasons. But the Sixth Circuit admonished in this very case that Judge Borman's "disregard of Sturgill's stated religious reason for seeking an accommodation because the request was, in [Judge Borman]'s view, 'medical in nature,'" was impermissible at the pleading stage. *Sturgill*, 114 F.4th at 809. Because Sturgill's proofs substantiate her pleadings, disregarding her stated religious reason for seeking an accommodation from Red Cross's vaccine mandate is also impermissible at the summary-judgment stage unless Sturgill is not credible as a matter of law. But the Court must leave Sturgill's credibility for a jury.

In conclusion, Red Cross is not entitled to summary judgment on liability.

### B. Sturgill's Motion

Sturgill's burden to show that she is entitled to summary judgment on liability is the mirror image of Red Cross's burden on its competing motion: Sturgill is entitled to summary judgment on liability if and only if *every* reasonable jury that made all credibility determinations in *Red Cross's* favor would find that her sincere religious beliefs conflicted with Red Cross's vaccine mandate. In support of her motion, Sturgill relies on the same proofs that she invoked to resist summary judgment for Red Cross on liability. As discussed above, those proofs, if true, show that Sturgill's compliance with Red Cross's vaccine mandate would have violated her religious beliefs.

But the Court need not take Sturgill's proofs as true to resolve her summary-judgment motion if Red Cross shows why a reasonable jury that made all credibility determinations in *its* favor would not do the same. And Red Cross argues that such a jury would find that Sturgill

11

only opposed getting vaccinated for non-religious medical reasons. In support of this argument, Red Cross points to Sturgill's statement that she believes the COVID vaccine could worsen her blood-clotting disorder and her admission that she takes other medications whose benefits she believes outweigh their risks. Indeed, the fact that Sturgill articulated concrete medical reasons for opposing Red Cross's vaccine mandate casts doubt on the sincerity of her abstract religious objections to the same. It follows that a reasonable jury that made all credibility determinations in Red Cross's favor would find that Sturgill's purported religious objection to Red Cross's vaccine mandate was insincere.

Sturgill disagrees and invokes *Bass v. T-Mobile USA, Inc.*, where this Court declined to dismiss a Title VII religious-discrimination claim against T-Mobile that stemmed from the plaintiff's refusal to get vaccinated for COVID. 726 F. Supp. 3d 749 (E.D. Mich. 2024). There, the plaintiff alleged that he submitted an accommodation request to T-Mobile that detailed a religious objection to T-Mobile's vaccination mandate; that T-Mobile denied his accommodation request; and that T-Mobile fired him for refusing to get vaccinated for COVID. Although this Court held that these allegations were sufficient to plead a Title VII religious-discrimination claim, *Bass* does not control here. For one thing, *Bass* concerned a motion to dismiss and not a motion for summary judgment. For another, this Court did not find that the *Bass* plaintiff's accommodation request articulated any medical objection to T-Mobile's vaccination mandate.

Red Cross also argues that a reasonable jury that drew all inferences in its favor would not find that Sturgill articulated a religious belief in the first instance, much less a religious one. To the extent that the issue of whether Sturgill can articulate a protected religious belief at trial is analytically distinct from the issue of whether she can prove that she genuinely holds such a belief, the Court need not address that issue to resolve Sturgill's summary-judgment motion.

That is true because even if every reasonable jury would find that Sturgill articulated a protected religious belief, Sturgill is not entitled to summary judgment on liability unless every reasonable jury would also find that she sincerely held that belief.  But as discussed above, a reasonable jury that made all credibility determinations in Red Cross's favor would resolve the sincerity issue against Sturgill.

In sum, Sturgill also is not entitled to summary judgment on liability.

## II.     Damages

Red Cross seeks summary judgment on back pay, front pay, and emotional-distress & punitive damages.

### A.     Back Pay

A successful Title VII plaintiff that was fired by the defendant-employer is "presumptively" entitled to recover "the difference between the amount that the plaintiff actually earned while being discriminated against and the amount that the plaintiff would have earned if no discrimination had occurred."  *Szeinbach v. Ohio State Univ.*, 820 F.3d 814, 821 (6th Cir. 2016).  This remedy is called back pay, and Red Cross argues Sturgill cannot prove that she is entitled back pay.

Red Cross concedes that Sturgill was unemployed after it fired her in January 2022 until she got a job at Corso Hospice Care the next month.  But Red Cross maintains that even if it discriminated against Sturgill, she did not earn less money at Corso because of its discrimination.  Red Cross feels the same way about Sturgill's subsequent jobs at Hospice of Michigan and Heritage Dialysis, and concludes that Sturgill cannot recover back pay.  Red Cross argues in the alternative that Sturgill can only recover back pay for the period between her termination from Red Cross and the start of her first new job at Corso.

Construing the record in the light most favorable to Sturgill, Red Cross hired her as a full-time employee and paid her $40 an hour for a total of $1,200 per week. But Sturgill's subsequent three employers all hired her as a contingent employee and only gave her part time hours. As a result, Sturgill earned less money at Corso, Hospice of Michigan, and Heritage Dialysis than she earned at Red Cross (twenty-five hours at $40 hourly totaling $1,000 per week at Corso; twenty-five hours at $36 hourly totaling $900 per week at Hospice of Michigan; and twenty to twenty-five hours at $45 hourly totaling $900 to $1,125 per week at Heritage Dialysis). And Sturgill's post-discrimination periods of employment were all preceded by periods of unemployment during which she earned no money at all. Thus, a reasonable jury could find that Sturgill has earned less money, or no money at all, because of Red Cross's discrimination.

Red Cross is not entitled to summary judgment on back pay.

**B.     Front Pay**

In addition to back pay, successful Title VII plaintiffs are "also presumptively entitled to reinstatement." *Shore v. Fed. Express Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985). But "when an appropriate position for the plaintiff is not immediately available without displacing an incumbent employee, courts have ordered reinstatement upon the opening of such a position and have ordered front pay to be paid until reinstatement occurs." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). This remedy is called front pay pending reinstatement. And "[i]n cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement." *Id.* This remedy is called front pay in lieu of reinstatement. Sturgill seeks reinstatement *or* front pay, and Red Cross argues that Sturgill cannot recover front

14

pay for the same reason that it believes she cannot recover back pay: because she did not earn less money as a result of its discrimination.

Front pay is a forward-looking remedy, so only Sturgill's current job at Heritage Dialysis is relevant. And Red Cross paid Sturgill $40 an hour for full-time work, but Heritage pays her $45 an hour for twenty to twenty-five hours of work per week as a contingent employee. Thus, Sturgill made $1,200 per week at Red Cross and now makes between $900 and $1,125 per week at Heritage Dialysis. It follows that a reasonable jury could find that Sturgill is entitled to front pay pending or in lieu of reinstatement.[2]

Red Cross is not entitled to summary judgment on front pay.

### C. Emotional-Distress Damages

Red Cross argues that Sturgill cannot come forward with any evidence showing that she suffered emotional distress, and therefore that it is entitled to summary judgment on emotional-distress damages. Sturgill responds that Red Cross should have fleshed out her emotional distress during her deposition, and that the Court should not hold her responsible for Red Cross's failure to do so. But Sturgill carries the burden of proof on damages, and Red Cross puts Sturgill to her proofs. Thus, Sturgill's failure to come forward evidence of any emotional distress means that no reasonable jury would find that Sturgill suffered emotional distress.

Red Cross is entitled to summary judgment on emotional-distress damages.

### D. Punitive Damages

To recover punitive damages from an entity such as Red Cross, a prevailing Title VII plaintiff must prove that the entity's agent at least recklessly violated Title VII—that the entity's agent "discriminate[d] in the face of a perceived risk that [his or her] actions w[ould] violate"

---

[2] Red Cross does not put Sturgill to her proofs on the issue of whether and when reinstatement would be feasible.

15

Title VII—and that the entity is vicariously liable for its agent's misconduct. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).  According to Red Cross, corporate employers cannot be held vicariously liable for their agents' at least reckless Title VII violations if the employer tried to comply with Title VII in good faith.  Red Cross also asserts that an employer's consultation with counsel before it violated Title VII is sufficient to prove such good-faith efforts as a matter of law.  Red Cross concludes that it is not vicariously liable in punitive damages because it consulted outside counsel before it denied Sturgill's accommodation request.

Not so fast.  Red Cross cites *Zakre v. Norddeutsche Landesbank Girozentrale* in support of its argument, but that case cuts against it.  541 F. Supp. 2d 555 (S.D.N.Y 2008).  There, a jury awarded punitive damages to a Title VII plaintiff that had prevailed at trial, and the defendant-employer moved for remittitur.  The employer argued that the plaintiff had failed to prove vicarious liability in punitive damages as a matter of law because the trial evidence showed that it had relied on advice of counsel when it discriminated against the plaintiff.  The court disagreed and explained "that consultation with counsel d[oes] not establish as a matter of law that [a Title VII] defendant attempted to comply with antidiscrimination laws." *Id.* at 573.  Thus, even if every reasonable jury would find that Red Cross tried to comply with Title VII in good faith, Sturgill could still prove that Red Cross is vicariously liable in punitive damages.  And Red Cross does not put Sturgill to her proofs on whether she can prove vicarious liability in punitive damages in the first instance.

Red Cross is not entitled to summary judgment on punitive damages.

## CONCLUSION & ORDER

Both parties seek summary judgment on liability, but a jury must decide whether Red Cross violated Title VII.  Red Cross also seeks summary judgment on back pay, front pay, and emotional-distress & punitive damages.  Sturgill cannot prove emotional-distress damages, but

she can prove that she is entitled to back pay, front pay or reinstatement, and punitive damages. Thus, Red Cross is entitled to summary judgment on emotional-distress damages but not on Sturgill's other claims for relief.

Accordingly, **IT IS ORDERED** that Sturgill's motion for summary judgment (ECF No. 79) is **DENIED**.  And Red Cross's motion for summary judgment (ECF No. 80) is **GRANTED** to the extent that it seeks judgment on Sturgill's claim for compensatory damages measured by emotional distress and is **DENIED** in all other respects.

**IT IS SO ORDERED.**

s/Sean F. Cox  
Sean F. Cox  
United States District Judge

Dated:  February 12, 2025